H. WILSON BLASHFIELD, Respondent, *v.* THE EMPIRE STATE TELE-
PHONE AND TELEGRAPH COMPANY, Appellant.

*Erection of telephone poles on a highway — right of the adjacent owners of the fee to compensation or damages — evidence stricken out by a referee after the submission of the case.*

The construction of a telephone line by the erection of poles and the placing of wires thereupon, within the limits of a country highway, constitutes an additional burden upon the fee of adjacent lands extending to its center, not contemplated or included in the original dedication or appropriation of the land for highway purposes, for which the landowner is entitled to compensation or damages.

*Eels* v. *Am. Tel. & Tel. Co.* (48 N. Y. St. Repr. 303 ; 20 N. Y. Supp. 600), followed.

A referee has no right, unless such right shall have been specially reserved, to strike out, after a case tried by him has been submitted for his decision, evidence which has been improperly admitted.

On the trial, before a referee, of an action brought by the assignee of claims against a telephone company, on the part of the adjacent owners of the fee in certain highways, to recover the damages resulting from the erection and maintenance of telephone poles and wires in the highways, the referee permitted, under objection and exception, witnesses for the plaintiff to give their opinions as to what the rental value of the respective premises would be or would have been without the telephone poles thereon, and the case was submitted for decision. While the case was under deliberation, the referee, without any further hearing or appearance of the parties, became doubtful as to the correctness of his ruling admitting such testimony, and in his report thereafter filed, which was in favor of the plaintiff, he stated that he had stricken out all such opinion evidence and had disregarded it in his assessment of damages and had based the same upon other evidence.

*Held*, that the action of the referee in striking out the evidence in question was without right and called for a reversal of the judgment entered on his report and for a new trial before another referee.

APPEAL by the defendant, the Empire State Telephone and Telegraph Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of Cortland county on the 9th day of April, 1892, upon the report of a referee.

The action was in trespass brought by the plaintiff as assignee of sixty-eight alleged causes of action against the defendant for building and maintaining telephone lines along certain highways in Cortland county without having made compensation to the owners of the fee of the highways over which the lines extended.

*Frederick E. Stroke,* for the appellant.

*Franklin Pierce,* for the respondent.

HARDIN, P. J.:

An opinion was delivered by the learned referee, in which he states : " The principal question in this case, and the first one to be met and disposed of, is whether or not the construction of a telephone line by the erection of poles and the placing of wires thereupon within the limits of a country highway, constitutes an additional burden upon the fee of adjacent lands extending to its center, not contemplated or included in the original dedication or appropriation of the land for highway purposes." Upon the question the learned referee concludes a lucid opinion as follows : " That the construction of defendant's telephone lines did impose an additional burden upon the fee of the highway for which the owner was entitled to compensation." Since the learned referee's opinion was written the case of *Eels* v. *American Telephone and Telegraph Co.* (48 N. Y. St. Repr. 303; S. C., 20 N. Y. Supp. 600), has been decided by the fifth department, and in that case it was held : " The occupancy of a highway by the poles of a telegraph or telephone company is not one of the ordinary and legitimate uses for which highways are established, and is the imposition of an additional burden on, and the taking of, the property of the owner of the fee, which enables him to maintain an action to compel the removal of the poles, and to recover possession of the premises occupied thereby, with damages, where such occupancy is without his consent and without compensation having been previously made him therefor."

(2) Plaintiff produced upon the hearing before the referee numerous witnesses to detail facts relating to the extent of the damages sustained by the several assignors of the plaintiff by reason of the acts of the defendant. It was also stipulated that the referee might pass along the lines and view the several poles and the locations, and the facts and circumstances surrounding them, and to take such observations into account in assessing damages. He, in company with the attorneys, passed over a larger portion of the lines, and it must be assumed he observed the situation of the poles and lines, and the extent of the interference with the properties of the several assignors.

Plaintiff called numerous witnesses to give evidence upon the subject of the damages sustained by the several assignors. Questions were propounded to them calling for their opinions as to the extent of the damages sustained by reason of the acts of the defendant. Objections were seasonably taken to the opinions; they were overruled and exceptions were taken to the rulings. The evidence was submitted to the referee, and during the time he had the cause under deliberation he discovered the decision made by the Court of Appeals in *Dwight* v. *E., C. & N. R. R. Co.* (132 N. Y. 199). Without any further hearing of the parties, or without their being before him and asking any ruling or decision, and while having the cause under consideration for final determination of the issues, he became doubtful about his rulings as to the admission of the opinions of the witnesses on the subject of the damages; and in his report he states in the seventy-fourth finding as follows: " I allowed the plaintiff upon the trial to call a number of witnesses, chiefly from among the plaintiff's assignors, and after the witnesses had described the nature of the injuries to their respective farms, I permitted them, upon the question of the injury to the rental value of their respective premises by the erection and maintenance of these telephone lines, to give in some cases their opinion as to what the rental value would be, or would have been, without the telephone poles thereon. After such evidence was given, I was invited by the attorneys for the respective parties to ride over the telephone routes involved in this controversy, and to observe the nature and extent of the injuries described in the evidence, and it was stipulated that I might consider what I thus observed in determining the amount of the plaintiff's damages if it should become necessary for me to so determine. I made such examination in company with the attorneys of the respective parties in September, 1891. Upon reflection and examination, I became doubtful as to the competency of the said opinion evidence given by ———, plaintiff's witnesses, as before detailed, and before assessing the damages herein, I called the attention of the attorneys of the respective parties to my doubt as to the competency of such evidence, and stated to them that upon my own motion I should strike out such evidence, and disregard the same in assessing damages herein. I have, therefore, stricken out all such opinion evidence on the part of the plaintiff's witnesses, and I have

entirely disregarded the same in my assessment of the plaintiff's damages, and I have assessed said damages entirely upon a consideration of the description of the damages given by both the plaintiff's and defendant's witnesses herein, and also upon my personal observation as to the nature and extent of such damages so far as the same could be ascertained by me in an examination while riding along said line.   An exception to my action in thus striking out such evidence is hereby given to either party who feels himself aggrieved thereby, with the same effect as though taken by him upon the trial of the action."   Our attention is called to several reported cases adverse to the action of the referee. (*Allen* v. *Way*, 7 Barb. 585; *Meyers* v. *Betts*, 5 Den. 81; *Bloss* v. *Morrison*, 47 Hun, 218.)   In the last case it was held, viz.: " Whatever may be the power of the court or a referee during the progress of a trial, as to striking out evidence which has been improperly admitted, no such right can exist after a cause has been submitted for decision, unless such right has been specially reserved."   Near the close of the opinion in that case, it was said: " The record of the evidence is closed with the submission of the case, and cannot be thereafter altered except by the consent of the parties.   It may be that in the case at bar the erroneous ruling of the referee made no difference in the defense offered by the appellant, but of this we cannot be certain, and even the seeming recognition of the right under discussion, as possessed by either a court or referee, would be so dangerous to suitors that in this instance it cannot pass unchallenged."   Respect for that authority seems to require us to condemn the action of the referee.

(3) Numerous other questions have been presented by the appellant.   Doubtless upon another trial the evidence will be changed to some extent, and it is not deemed useful to comment upon the evidence nor to consider the rulings in detail.

The judgment must be reversed and a new trial ordered before another referee, with costs to abide the event.

PARKER, J., concurred; MERWIN, J., dissented.

Judgment reversed and new trial ordered, with costs to abide the event.